**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward J. Fouchia,<br><br>              Plaintiff,<br><br>vs.<br><br>Carlota Copper Company, et al.,<br><br>              Defendants. | No. CV 11-00374-PHX-NVW<br><br>**ORDER** |

Before the Court are: (1) "Defendant's Rule 16(f) Fed. R. Civ. P. Motion to Exclude Plaintiff's Expert Testimony" (Doc. 38), filed by Defendants Gold Canyon Mining & Construction and Eddie Smutt ("Defendants"); (2) Plaintiff's "Motion to Modify Scheduling Order for Good Cause" contained as part of Plaintiff's response to Defendants' motion (Doc. 43); and (3) Plaintiff's "Motion for Expedited Deadline to File Reply" (Doc. 46). For the reasons stated below, Defendants' motion will be granted in part, Plaintiff's motion to modify the scheduling order will be denied, and Plaintiff's motion for expedited deadlines will be denied as moot.

**I.    BACKGROUND**

According to the complaint:

> On February 3, 2009 Plaintiff occupied a stationary vehicle on Defendant Carlota's property. At that same time and place, Defendant Smutt, while in the course and scope of his employment with Defendant Carlota and/or Gold, drove a piece of heavy machinery directly into Plaintiff's vehicle, ejecting Plaintiff from his vehicle and causing him serious physical injury . . . .

(Doc. 1 at 14.) The complaint contains no further details. However, a report from Plaintiff's vocational expert (discussed in more detail below) discloses that Plaintiff is a self-employed trucker who owned both trucks and heavy equipment trailers. (Doc. 43-7 at 4.) And a report from Plaintiff's truck safety expert (also discussed in more detail below) elaborates significantly on the incident alluded to in the complaint:

> This incident occurred on April 14, 2009, wherein [Plaintiff], [a] truck driver . . . [was] invited onto the Carlota Copper Company Mining property located in Gila County for the purpose of loading and transporting a piece of heavy equipment, i.e. Caterpillar Compactor.
>
> It is customary for the equipment owner [here, the mining company] to load the heavy equipment. It is also customary that the truck driver [*i.e.*, Plaintiff] direct the loading process as he is going to be responsible for securing the load and transporting it on the highway.
>
> Positioning heavy equipment on a transport trailer is critical to the safe and legal transportation of heavy equipment loads. In this instance, [Plaintiff] provided the trailer, made the trailer ready for loading and waited [for the Compactor] to be loaded. After a period of time (approximately 2 plus hours), an unqualified operator decided to attempt to load the heavy equipment himself rather than wait for a qualified equipment operator.
>
> In this process, he was waived off from loading more than once as he was coming on the trailer at an angle which would have positioned the heavy equipment in an unacceptable and unsafe position. On a subsequent attempt, [Plaintiff] attempted to waive him off again, but the unqualified equipment operator ignored the waive-off, and proceeded placing the load onto the trailer.
>
> At this time he was in such a position that allowed one wheel to spin ripping up the floor of the transport trailer, [and] as the floor gave way, the sheep's foot roller [a large drum covered with blunt spikes used to perforate dirt] caught on one of the cross members of the heavy equipment transport trailer thus causing the trailer to lurch and causing [Plaintiff] to be

> thrown from his position which he had taken to be observable by the operator, and at the same time, able to observe both the right and left sides of the piece of equipment as it related to his heavy equipment transport trailer.

(Doc. 43-12 at 11.)

## II.     PROCEDURAL HISTORY

On July 29, 2011, this Court entered a scheduling order requiring Plaintiff to "provide full and complete expert disclosures . . . no later than January 12, 2012." (Doc. 24 at 2.) Plaintiff missed that deadline. On January 30, 2012, by stipulation of the parties, this Court extended Plaintiff's expert disclosure deadline to April 12, 2012. (Doc. 28.)

On March 27, 2012, Defendants' counsel sent an e-mail to Plaintiff's counsel stating: "I am following up on our discussion of settlement and my offer of $40,000. Your expert opinions are due April 12. Are you interested in trying to settle this before incurring expert costs?" (Doc. 43-2 at 2.) Plaintiff's counsel responded (copying his paralegal): "We are trying to get a hold of him [*i.e.*, Plaintiff]. We'll let you know." (*Id.*)

Plaintiff made no expert disclosures on April 12, 2012. On May 3, 2012, Plaintiff's counsel e-mailed Defendants' counsel to say, among other things, that he was planning "to get a vocational expert/accountant" and would "be seeking an opinion" to the effect that Plaintiff's "back condition is permanent." (Doc. 43-5 at 2.) Defendants' counsel replied, in relevant part, "I am not sure where we go with your expressed intent to get vocational, accounting and permanency expert opinions as none of what you assert has been disclosed or made part of your responses to our discovery requests and the April 12 deadline for you to disclose expert opinions has long passed." (*Id.*)

The following day, Plaintiff's counsel transmitted to Defendants' counsel a supplemental Rule 26 disclosure, disclosing as experts David Morris, M.D. (Plaintiff's treating physician), Michael Holda, M.D. (an examining physician), J. Matthew Sims (a vocational economist), and James Acock (a truck safety expert). (Doc. 43-6 at 4–6.)

Prior to April 12, Plaintiff's counsel had disclosed an independent medical examination report from Dr. Holda (Doc. 43-8) and some treatment records obtained from Dr. Morris (Doc. 43-11 at 7–16). Plaintiff's counsel had disclosed nothing relating to the other two experts.

On May 8, 2012, Plaintiff's counsel disclosed a report from Mr. Sims, the vocational economist. (Doc. 43-7.) Taking into account Plaintiff's earnings history in light of how he had previously depreciated his business assets, Mr. Sims estimated that the total present value of Plaintiff's economic damages is $762,559.

On May 30, 2012, Plaintiff's counsel disclosed a report from Mr. Acock, the truck safety expert, who characterized his opinion as "extremely preliminary." (Doc. 43-12 at 11.) Nonetheless, Mr. Acock concluded that the person loading the Compactor onto Plaintiff's transport trailer took an unacceptable risk when he ignored Plaintiff's waive-off, and in so doing, caused the lurch that in turn threw Plaintiff to the ground, causing his injuries.

Defendants have now moved to prevent Plaintiff from presenting any expert testimony or evidence. In response, Plaintiff's counsel explained that he missed the April 12 expert disclosure deadline because his paralegal failed to enter that deadline into counsel's calendaring system. Specifically,

> the deadline was not calendared by [the] paralegal . . . . [She] is an experienced paralegal with over 20 years in litigation. Her standard operating procedure is to enter all dates into a calendaring system that notes the date something is due and also provides a reminder 30 days before the due date that follows the attorney's calendar every day until it was checked off by either the attorney or the paralegal. These deadlines were received by [the paralegal] but they were filed without putting them in the calendaring system. Without the deadline on the calendar the attorney assumes that the reports are already in or that testimony is being given by treating physicians only who were disclosed already. Without the deadlines set [Plaintiff]'s counsel wasn't focused and reminded to get this disclosure out. He was focused on other

> deadlines on his calendar. Even [Defendants' March 27] email wouldn't trigger any additional action because the system is indicating that the tasks are accomplished. In this light [Defendants'] email would be understood to mean expert costs for [Defendants] not [Plaintiff].
>
> [Plaintiff]' counsel was also focused on settlement discussions. [Defendants] had made an offer. During that time [Plaintiff]'s counsel was having difficulty getting a hold of [Plaintiff]. The difficulty getting a hold of the client was another reason for the delay.

(Doc. 43 at 6–7.)

This explanation is mostly based on an affidavit from the paralegal, who stated:

> The [expert disclosure deadline] was not calendared by me.
>
> My standard operating procedure is to enter all dates in to a calendaring system that notes the date something is due . . . .
>
> The deadlines were received by [me] but they were filed without putting them in the calendaring system.

(Doc. 43-1 ¶¶ 7–9.)

### III.  LEGAL STANDARD

"On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney * * * fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Among the actions "authorized by Rule 37[]" is "prohibiting the disobedient party . . . from introducing designated matters in evidence." *Id.* 37(b)(2)(A)(ii). This is the only sanction Defendants have requested. The Court has discretion whether to impose this or any other sanction. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987); *Williams v. Johnson*, 278 F.R.D. 10, 13 (D.D.C. 2011).

### IV.  ANALYSIS

In the Arizona state courts, "the error of a secretary can excuse an untimely filing. For example, the inadvertent failure of a secretary to notify an attorney of a deadline can warrant setting aside a default on the grounds of excusable neglect." *Cook v. Indus.*

*Comm'n of Ariz.*, 133 Ariz. 310, 312, 651 P.2d 365, 367 (1982). This generally requires a showing that the law firm had a calendaring system on which the attorney could reasonably rely to inform him of upcoming deadlines, and that the system broke down through no fault of the attorney, nor any knowledge that the system is unreliable. *Coconino Pulp & Paper Co. v. Marvin*, 83 Ariz. 117, 120–21, 317 P.2d 550, 552 (1957). Further, the attorney must show "that he had otherwise diligently and actively processed the case." *Ace Auto. Prods., Inc. v. Van Duyne*, 156 Ariz. 140, 144, 750 P.2d 898, 902 (Ct. App. 1987).

Ninth Circuit law regarding secretarial negligence is not as developed as Arizona law, but the Ninth Circuit has declared that "[s]ecretarial negligence, if it exists, is chargeable to counsel." *Hart v. United States*, 817 F.2d 78, 81 (9th Cir. 1987).

Here, it is not clear that the Plaintiff's counsel's paralegal was negligent. Neither she nor counsel gives any indication of why she did not enter the expert disclosure deadline into the calendaring system. She never says, for example, "I accidentally failed to enter the date into the calendaring system because . . . ." She and counsel instead rely on cryptic phrases like "[t]hese deadlines were received by [the paralegal] but they were filed without putting them in the calendaring system." (Doc. 43 at 6.) That is not a confession of excusable neglect. It establishes only that the deadline never made it into the calendaring system. It does not establish *why*. On this basis alone, the Court could award Defendants the sanction of excluding Plaintiff's expert testimony.

However, there is further evidence of inexcusable neglect. On March 27, 2012, Defendants' counsel sent an e-mail to Plaintiff's counsel stating: "I am following up on our discussion of settlement in my offer of $40,000. Your expert opinions are due April 12. Are you interested in trying to settle this before incurring expert costs?" (Doc. 43-2 at 2.) Plaintiff's counsel replied, "We are trying to get a hold of [Plaintiff]. We'll let you know," and copied his paralegal on that reply. (*Id*.) Thus, counsel and his paralegal were explicitly warned of their upcoming deadline but ignored it.

Moreover, counsel's explanation of this e-mail is not credible. Counsel states that the e-mail "wouldn't trigger any additional action because the system is indicating that the tasks are accomplished. In this light [Defendants'] email would be understood to mean expert costs for [Defendants] not [Plaintiff]." (Doc. 43 at 6–7.) This explanation employs language as evasive as that used to explain the paralegal's failure. "Wouldn't trigger" and "would be understood" is much different than "didn't trigger" and "was understood." As written, counsel's explanation suggests that he is presenting after-the-fact rationalizations, not explanations.

But even if counsel meant to explain what actually happened, the explanation does not make sense. Any reasonably diligent attorney would not read such an e-mail and ignore the assertion of a deadline simply because "the system is indicating that the tasks are accomplished." At minimum, the attorney would recognize that "the system" and his opponent disagree about a deadline — a disagreement that, in all prudence, needs resolution. In addition, no one could read Defendants' counsel's e-mail and think that it referred to Defendants' expert costs rather than Plaintiff's. There is no ambiguity in "*Your* expert opinions are due April 12. Are *you* interested in trying to settle this *before incurring expert costs*?" (emphasis added).

Finally, the Court notes that Plaintiff's counsel had already missed his first expert deadline (January 12, 2012). Only by stipulation of Defendants — entered after that deadline passed — did he receive an extension. And most of what Plaintiff's counsel untimely disclosed could have been disclosed by the original expert deadline, regardless of the difficulty counsel had in contacting his client. Counsel already had information from Drs. Morris and Holda. Mr. Acock's report was based almost entirely on pleadings, disclosures, and public records — and one undated telephone interview with Plaintiff. (Doc. 43-12 at 10–11.) Mr. Sims' report relied entirely on the complaint, Social Security documents, and income tax records. (Doc. 43-7 at 39.)

Accordingly, Plaintiff's counsel has insufficiently explained his failure to meet the April 12 deadline, and that failure is otherwise inexcusable in light of his general lack of

diligence as to expert matters and the reminder he received from Defendants' counsel on March 27.

Plaintiff's counsel, however, argues that there is no prejudice because "[a] trial date is not set." (Doc. 43 at 9.) But the undersigned does not set trial dates until summary judgment motions have been resolved or the deadline for filing such motions passes without action from the parties. If proximity to a trial date was the yardstick for prejudice, no missed deadline in the Scheduling Order could ever be prejudicial and Rule 16(f)(1)(C) would become a dead letter. The Scheduling Order thus includes the following: "<u>The Deadlines Are Real</u>. The parties are advised that the Court intends to enforce the deadlines set forth in this order, and they should plan their litigation activities accordingly." (Doc. 24 ¶ 11 (emphasis in original).) Plaintiff's counsel has offered no reason sufficient to overcome this warning.

The Court must therefore consider what order would be "just" in the circumstances. Fed. R. Civ. P. 16(f)(1)(C). Here, exclusion of certain potential experts, or parts of their testimony, is just.

Beginning with Dr. Morris, Plaintiff's treating physician: "Generally, a treating physician . . . is a percipient witness of the treatment he rendered." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011). Nonetheless, "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Id*. at 826.

Plaintiff's May 4 supplemental disclosure states that Dr. Morris "is expected to testify consistently with all records he generated . . . . He is expected to testify to [Plaintiff]'s need for back surgery and that the treatment and costs were necessary and reasonable." (Doc. 43-6 at 4.) To the extent these opinions were formed during the course of treatment, Dr. Morris's expected testimony need not be excluded. Without more information, however, the Court cannot evaluate which opinions meet this standard and which do not. Because at least part of Dr. Morris's testimony appears admissible, it

will not be excluded entirely at this point. More specific objections may be raised at the motion in limine phase or at trial.

As for Dr. Holda, Plaintiff retained him as an examining physician only. Like Dr. Morris, he is expected to "testify that the treatment [Plaintiff] received was reasonable and necessary and that [Plaintiff] is a candidate for back surgery." (Doc. 43-6 at 5.) As a percipient witness, Dr. Holda may testify without being disclosed as an expert concerning what he learned directly from the examination — the report of which was disclosed to Defendants a year ago. However, Dr. Holda may not offer any opinion "based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Thus, to the extent his expected testimony encompasses such an opinion, it is excluded. Specific objections may be raised at the motion in limine phase or at trial. But in any event, Dr. Holda's opinions may duplicate those formed by Dr. Morris during the course of treatment. If so, Dr. Holda's opinions are unnecessary.

Plaintiffs' other two experts have no personal knowledge from which to testify, and therefore must be excluded entirely. This does not, however, leave Plaintiff without a case. Presumably Plaintiff has personal knowledge regarding safe loading of heavy construction equipment, given that understanding and complying with such safety measures was part of his job. Plaintiff certainly has personal knowledge about what Defendants' operator did or did not do when loading the Compactor. Thus, Plaintiff's own testimony can largely provide the information Mr. Acock was expected to provide.

As for Plaintiff's lost future earnings, Plaintiff presumably has personal knowledge about the numbers underlying Mr. Sims' calculations. Plaintiff can estimate in good faith what he expected to earn before retirement, and the discount to present value may be performed by way of attorney argument without expert testimony. Plaintiff may not be able to defend his estimated damages as well as an expert, but he is not left without any ability to calculate or argue for damages.

Finally, if Defendants offer expert witnesses on any of the subjects about which Plaintiff's experts would have testified in the capacity of an expert, Plaintiff may offer these otherwise excluded witnesses as rebuttal experts.

IT IS THEREFORE ORDERED that "Defendant's Rule 16(f) Fed. R. Civ. P. Motion to Exclude Plaintiff's Expert Testimony" (Doc. 38) is GRANTED as follows:

1. The opinion testimony of Dr. Morris is admissible to the extent he expresses opinions formed during the course of treatment, but will otherwise be excluded.
2. The testimony of Dr. Holda is admissible to the extent he testifies to personal knowledge gained from examining Plaintiff, but will otherwise be excluded.
3. The testimony of Mr. Sims and Mr. Acock is excluded.

IT IS FURTHER ORDERED that Plaintiff's "Motion to Modify Scheduling Order for Good Cause" (Doc. 43) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's "Motion for Expedited Deadline to File Reply" (Doc. 46) is DENIED as moot.

Dated this 8th day of June, 2012.

_____
Neil V. Wake
United States District Judge